MATTER OF M–

In Adjustment of Status Proceedings

*Designated by Commissioner January 31, 1989*

(1) A conviction exists pursuant to section 245A(a)(4)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1255a(a)(4)(B) (1988), where (1) a judge or a jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere, and (2) the judge has ordered some form of punishment or penalty, including but not limited to a fine or probation.

(2) An alien who pled guilty to a felony and, as a result, was fined $1,000 and placed on probation for 3 years is an alien who has been convicted of a felony within the purview of section 245A(a)(4)(B) of the Act.

ON BEHALF OF APPLICANT:　Jeff Larsen, Esquire
　　　　　　　　　　　　 210 Barton Springs Road, Suite 300
　　　　　　　　　　　　 Austin, Texas 78704

This is an appeal from the district director's decision finding the applicant ineligible for temporary resident status under section 245A of the Immigration and Nationality Act, 8 U.S.C. § 1255A (Supp. IV 1986). The appeal will be dismissed.

The applicant is a single 23-year-old male who is a native and citizen of Mexico. He claims he entered the United States without inspection on August 1, 1981. On February 2, 1988, a judge of the District Court of Travis County, Texas, found the applicant guilty of the offense of forgery, a third degree felony. However, on February 17, 1988, the judge deferred "further proceedings without entering an adjudication of guilt pursuant to Article 42.12, Section 3(d) of the Code of Criminal Procedure," assessed a $1,000 fine, and placed the applicant on probation for 3 years.

On the basis of the court's order, the district director found the applicant ineligible for temporary resident status on the ground he had been convicted of a felony. Additionally, he found such an offense to be a crime involving moral turpitude, thereby rendering the applicant excludable under section 212(a)(9) of the Act, 8 U.S.C. § 1182(a)(9) (1988). The district director did not rule as to whether the applicant had otherwise met the other statutory eligibility requirements.

On appeal, counsel for the applicant raises four arguments. First, he claims that the district director erred in deciding the case without stating the legal reasoning.[1] Second, he argues that if the director relied on *Matter of Ozkok,* 19 I&N Dec. 546 (BIA 1988), and if the Legalization Appeals Unit ("LAU") adopted *Ozkok,* a deferred adjudication is not a final conviction. Third, he urges the Service to construe the term "conviction" in the light of congressional intent and not on the Board's subsequent evaluation of policy considerations. Finally he argues that even if there had been a "conviction," the applicant is not excludable under section 212(a)(9) of the Act because there has been no sentence of confinement.

## WHAT IS A CONVICTION FOR THE PURPOSE OF SECTION 245A(a)(4)(B) OF THE ACT?

Section 245A(a)(4)(B) of the Act makes ineligible for temporary resident status any alien *"convicted* of a single felony or three misdemeanors committed in the United States." (Emphasis added.) The definition contains two elements which must be satisfied in order to find an applicant statutorily ineligible for temporary resident status. The crime committed by the applicant must be a felony or three misdemeanors, and the applicant must have been "convicted" of those crimes.

The Service has defined the term "felony" as a "crime committed in the United States, punishable by imprisonment for a term of more than one year, regardless of the term such alien actually served. . . ." 53 Fed. Reg. 9862, 9864 (1988) amending 8 C.F.R. § 245a.1(p) (1988). The applicant does not dispute here that the crime he committed is a felony pursuant to the foregoing regulation. Rather the focus of his challenge is on the meaning of the first element, the term "convicted."

The term "convicted" in section 245A(a)(4)(B) of the Act is not defined either by the statute or the implementing Service regulations. In construing this term, we are guided by several considerations.

First, although Congress did not define the term "convicted," section 245A(a)(4)(B) of the Act and its legislative history indicate Congress' concerns about legalizing aliens who have committed crimes.

---

[1] Counsel, however, does not suggest that the director's failure to state the reasoning for denial should result in a reversal or remand. To the extent that the issues raised on appeal are a matter of law, not facts, a remand is not necessary. Service regulations provide that "[w]henever a formal application or petition . . . is denied, the applicant will be given written notice setting forth the *specific reasons* for the denial." 8 C.F.R. § 103.3(a)(1) (1988) (emphasis added).

These concerns are reflected in the criminal grounds of statutory ineligibility set forth in section 245A(a)(4)(B) of the Act, an additional provision to the already existing criminal grounds of excludability under section 212(a) of the Act. Thus, Congress established two statutory bases aimed at excluding criminal aliens from obtaining benefits under section 245A of the Act. Moreover, while Congress provided for the waiver of certain grounds of excludability, Congress also stated that "grounds of exclusion relating to violations of the law or engaging in persecution of others may never be waived." H.R. Rep. No. 682, 99th Cong., 2d Sess. 72 *reprinted in* 1986 U.S. Code Cong. & Ad. News 5649, 5676. Congress therefore did not in section 245A of the Act provide waivers of grounds for exclusion under sections 212(a) (9) and (10) of the Act. Section 245A(d)(2)(B)(ii)(I) of the Act.

Therefore, while on one hand Congress intended the Service to implement the legalization program in a liberal and generous fashion and to incorporate flexibility into the standards for legalization eligibility, *Matter of C-*, 19 I&N Dec. 808 (Comm. 1988), Congress clearly intended that aliens who had not abided by laws of the United States, other than certain civil immigration violations, would not be permitted to benefit from the legalization program.

Secondly, we must consider the implication of Congress' use of the term "convicted" under section 245A(a)(4)(B) of the Act in light of the use of the same term in other provisions of the Act. Counsel points out that when Congress used the term "conviction" in section 245A of the Act, there was a long history of jurisprudence defining the term "conviction" for immigration purposes. Unfortunately, the "long history of jurisprudence" has not always been clear due mainly to evolving concepts of "conviction" under state law. As the Board recently stated, "The question of what state action constitutes a conviction with sufficient finality for purposes of the immigration laws is one with which the Board has wrestled for many years." *Matter of Ozkok, supra,* at 548-49. The Board acknowledged that "the standard which [it has] applied to the many variations in state procedure may permit anomalous and unfair results in determining which aliens are considered convicted for immigration purposes." *Id.* at 550. The Board further noted that, in its previous approach, form had been placed over substance "and aliens who are clearly guilty of criminal behavior and whom Congress intended to be considered 'convicted' have been permitted to escape the immigration consequences normally attendant upon a conviction." *Id.* at 551.

A review of the case law existing at the time Congress passed section 245A of the Act discloses that there was no catch-all defini-

tion of the term "conviction." Rather, the Board reviewed on a case-by-case basis actions taken by state courts, particularly actions ameliorating the consequence of a conviction, to determine whether a conviction existed for immigration purposes. *See Matter of Ozkok, supra,* and cases cited therein. More significantly, the Board has interpreted the term "convicted" within the context of deportation and exclusion proceedings which are substantively different from those before the LAU where aliens seek benefits under section 245A of the Act.

Finally, we note the Service's regulation defining the term "conviction." The Service has determined that a "conviction" exists for purposes of initiating deportation proceedings when the following elements are presented:

(1) There has been a judicial finding of guilt;

(2) All judicial appeals have been waived, exhausted, or the appeal period has lapsed; and

(3) The action taken by the court results in a finding which is considered a conviction under the laws of the Federal, State or local government for at least some purpose.

8 C.F.R. § 242.2(g) (1988).

We are thus confronted not with a body of existing law that has always been clear, but with a body of law that has been evolving; with the regulations by the Service defining the term "conviction" for purposes of commencing deportation proceedings; and, with a legislative history indicating Congress' intent to exclude aliens convicted of crimes from benefitting under section 245A of the Act.

The foregoing considerations must be viewed from the perspective of the role the LAU has been assigned under section 245A of the Act. Congress directed the Attorney General to establish a single level of administrative appellate review of determinations under section 245A of the Act. The Service established the LAU pursuant to this statutory mandate. In so doing, the Service ensured that the determinations made by the LAU are separate and apart from those determinations made by either the Board or the Administrative Appeals Unit ("AAU"). *See* 52 Fed. Reg. 16,190 (1987) ("Although the Administrative Appeals Unit will be the Service's designated appellate review authority, a separate branch within the Administrative Appeals Unit has been established to handle appeals under sections 210 and 245A of the Act.")

Consequently, the LAU's interpretations of section 245A of the Act and the implementing regulations may not always reflect interpretations made by either the Board or the AAU. However, to the extent that whatever issue the LAU may decide is only within

the context of section 245A of the Act, future conflicts of interpretation among the LAU, AAU, and the Board may be avoided.

We find, after reviewing the pertinent case law, that when this section was enacted, there was no universal definition of the term "conviction" for immigration purposes. Consequently, with no particular definition in mind, Congress left it up to the Service to define the term. Our finding is fortified by the fact that section 245A(a)(4)(B) of the Act is an entirely new statutory provision. This provision is unlike other provisions aimed at excluding criminal aliens based on the nature of the crime they committed, such as section 212(a)(9) of the Act (crimes involving moral turpitude), or the type of crime, such as section 212(a)(23) of the Act (crimes relating to a controlled substance). The net cast by this new provision is broader than existing provisions under section 212(a) of the Act. The only limitation is that the crimes must have been committed in the United States. Consequently, we find nothing to suggest that Congress intended to limit the scope or coverage of section 245A(a)(4)(B) of the Act.

In interpreting a federal statute, the Supreme Court has held that whether a conviction exists is a question of federal, not state law. "This makes for desirable national uniformity unaffected by varying state laws, procedures, and definitions of 'convictions.'" *Dickerson* v. *New Banner Institute, Inc.*, 460 U.S. 103, 112 (1983). The Court noted that in some circumstances a plea of guilty alone is enough to constitute a "conviction." However, the Court held that for purposes of the federal gun control laws, a plea of guilty to a disqualifying crime and its notation by a state court, followed by a sentence of probation, is equivalent to being "convicted" within the language of 18 U.S.C. § 922 (g) and (h) (1988). (Provision makes it unlawful for any person to receive, among other matters, any firearm if the person "has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year.")

Accordingly, in the light of the legislative history of section 245A of the Act, existing administrative case law, Service regulations, and the reasoning of the Supreme Court in *Dickerson* v. *New Banner Institute, Inc.*, supra, as a general rule a conviction will be found for purposes of section 245A(a)(4)(B) of the Act where these two elements are found:

(1) a judge or jury has found the alien guilty or he has entered a plea of guilty or nolo contendere; and

(2) the judge has ordered some form of punishment or penalty, including but not limited to a fine or probation.

We are aware that this standard may be more severe than the standard imposed by the Board in *Matter of Ozkok, supra.*[2] However, we have stated the standard as a general rule, and we do not determine here whether expungements or other judicial acts may not be an exception to this rule.

## HAS THE APPLICANT BEEN CONVICTED UNDER SECTION 245A(a)(4)(B) OF THE ACT?

On February 2, 1988, the applicant pled guilty to a third degree felony. However, the court issued an order deferring further proceedings against the applicant, fined him $1,000, and placed him on probation for 3 years. A copy of the court's order is in the record before us. Applying our standard we find that the applicant pled guilty and that the court imposed upon him two types of punishment, a fine and probation. If the court had not found him guilty, certainly the court would not have imposed a fine or placed the applicant on probation.

Consequently, we find that, pursuant to section 245A(a)(4)(B) of the Act, the applicant has been convicted of a felony and is therefore statutorily ineligible for temporary resident status under section 245A of the Act.

We need not determine whether the applicant is inadmissible pursuant to section 212(a)(9) of the Act or whether the applicant has otherwise met all the eligibility criteria under section 245A of the Act.

**ORDER:** The appeal is dismissed. This decision constitutes a final notice of ineligibility.

---

[2] To the extent that under the third prong of the standard enunciated in *Ozkok*, the Board will necessarily refer to the state law in question, it would be premature to predict whether the Board's standard will practically be much different from the standard we have set forth in this decision.